**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DISTRIBUTION SERVICES OF AMERICA, INC., | Civil Action No. 7:23-cv-04635 |
| Plaintiff, | |
| v. | Hon. Cathy Seibel |
| ALLSTATE INSURANCE COMPANY, | |
| Defendant. | |

**MEMORANDUM IN SUPPORT OF ALLSTATE'S MOTION TO DISMISS**

## TABLE OF CONTENTS

FACTUAL BACKGROUND ................................................................................................................ 1

I.     Allstate and DSA entered into an agreement whereby DSA would recommend Allstate to its members in exchange for commission-based payments. ........................................................................................................................ 1

II.    After 28 years, Allstate exercised its right to terminate the Agreement at will. ................................................................................................................................. 2

LEGAL STANDARD ........................................................................................................................ 3

ARGUMENT ...................................................................................................................................... 4

I.     The Agreement is governed by, and this Court should apply, Illinois law ....................... 5

II.    Allstate was permitted to terminate the Agreement as a matter of public policy. ......................................................................................................................... 5

        A.     The Illinois Supreme Court has held that contracts of indefinite duration are terminable at the will of either party as a matter of public policy. ..................................................................................................................... 5

        B.     Because the Agreement is of an indefinite duration, it is terminable at will. ................................................................................................ 8

III.   DSA's declaratory judgment and equitable accounting claims are duplicative of its breach of contract claim and thus fail for the same reasons. ................................................................................................................................. 10

CONCLUSION ................................................................................................................................ 12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abu Dhabi Commercial Bank v. Morgan Stanley & Co. Inc.*,
 No. 08 CIV. 7508 (SAS), 2009 WL 3346674 (S.D.N.Y. Oct. 15, 2009) ..................................4

*Alderman Drugs, Inc. v. Metro. Life Ins. Co.*,
 515 N.E.2d 689 (Ill. App. Ct. 1987) ..................................................................................8, 9

*Amerisure Ins. Co. v. Laserage Tech. Corp.*,
 2 F. Supp. 2d 296 (W.D.N.Y. 1998) ......................................................................................5

*Amusement Indus. V. Stern*,
 693 F. Supp. 2d 301 (S.D.N.Y. 2010).....................................................................................9

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009)............................................................................................................3, 8

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007)................................................................................................................3

*Dairy Queen, Inc. v. Wood*,
 369 U.S. 469 (1962).............................................................................................................11

*Devyn Corp. v. City of Bloomington*,
 38 N.E.3d 1266 (Ill. App. Ct. 2015) ....................................................................................11

*DiFolco v. MSNBC Cable LLC*,
 622 F.3d 104 (2d Cir. 2010)...................................................................................................3

*Dolphin Direct Equity Partners, LP v. Interactive Motorsports & Entm't Corp.*,
 No. 08 Civ. 1558(RMB)(THK), 2009 WL 577916 (S.D.N.Y. Mar. 2, 2009).......................10

*Drake Enters. v. Colloid Envtl. Techs. Co.*,
 No. 08 C 6753, 2009 WL 1789355 (N.D. Ill. June 24, 2009) ..............................................10

*Faulkner v. Beer*,
 463 F.3d 130 (2d Cir. 2006)....................................................................................................4

*Greene v. Mizuho Bank, Ltd.*,
 206 F. Supp. 3d 1362 (N.D. Ill. 2016) .................................................................................11

*Intellectual Capital Partner v. Institutional Credit Partners LLC*,
 No. 08 Civ. 10580(DC), 2009 WL 1974392 (S.D.N.Y. July 8, 2009) ..................................10

*Jespersen v. Minn. Mining & Mfg. Co.*,
   681 N.E.2d 67 (Ill. App. Ct. 1997) ...................................................................................9

*Jespersen v. Minn. Mining & Mfg. Co.*,
   700 N.E.2d 1014 (Ill. 1988) ............................................................................... *passim*

*Kempner Mobile Elecs., Inc. v. Southwestern Bell Mobile Sys.*,
   428 F.3d 706 (7th Cir. 2005) .........................................................................................10

*Manigault v. ABC Inc.*,
   No. 17-CV-7375(KNF), 2018 WL 2022823 (S.D.N.Y. Apr. 12, 2018) ....................................3

*Oil Express Nat'l, Inc. v. Latos*,
   966 F. Supp. 650 (N.D. Ill. 1997) ...................................................................................11

*Perks v. TD Bank, N.A.*,
   444 F. Supp. 3d 635 (S.D.N.Y. 2020) ................................................................................3

*Profile Prods., LLC v. Soil Mgmt. Techs., Inc.*,
   155 F. Supp. 2d 880 (N.D. Ill. 2001) ................................................................................8

*R.J.N. Corp. v. Connelly Food Products, Inc.*
   529 N.E.2d at 1186-87 ..................................................................................... *passim*

*Rico Indus., Inc. v. TLC Grp., Inc.*,
   6 N.E.3d 415 (Ill. App. Ct. 2014) ....................................................................................5

*Riverside Mktg., LLC v. Signaturecard, Inc.*,
   425 F. Supp. 2d 523 (S.D.N.Y. 2006) ................................................................................5

*Ruca Hardware, Ltd. v. Ruca Chien*,
   No. 94 C 3635, 1995 WL 307172 (N.D. Ill. May 17, 1995) ......................................................8

*Sofi Classic S.A. de C.V. v. Hurowitz*,
   444 F. Supp. 2d 231 (S.D.N.Y. 2006) ..............................................................................10

*Torain v. Clear Channel Broad., Inc.*,
   651 F. Supp. 2d 125 (S.D.N.Y. 2009) ............................................................................4, 5

**Other Authorities**

Rule 12(b)(6) .......................................................................................................................3

At the heart of this case is a very simple question that has been answered in the negative repeatedly in Illinois: is a contract that is not terminable by either party "except for cause" perpetually enforceable under Illinois law? The answer is "no." Simply put, Illinois public policy and law prohibit the kind of perpetual contract that Distribution Services of America, Inc. ("DSA") is relying on before this Court. As a result, DSA's claims against Defendant Allstate Insurance Company ("Allstate") must be dismissed.

Almost thirty years ago, DSA and Allstate entered into a letter agreement whereby DSA was to solicit business for Allstate in exchange for a fee based on the number of clients DSA signed up with Allstate (the "Agreement").[1] The Agreement expressly states that it "is not terminable by either party except for cause." As is more fully discussed below, Illinois law could not be clearer that even when parties expressly elect to make an agreement perpetual, the contract is, as a matter of law, terminable at will. *Jespersen v. Minn. Mining & Mfg. Co.*, 700 N.E.2d 1014, 1017 (Ill. 1988). Consequently, and by DSA's own admission, Allstate terminated the Agreement on October 14, 2022 and, despite DSA's pleas to the contrary, Allstate's termination was proper under Illinois law. Naturally then, DSA's Complaint should be dismissed.

## FACTUAL BACKGROUND

**I.    Allstate and DSA entered into an agreement whereby DSA would recommend Allstate to its members in exchange for commission-based payments.**

This case stems from an Agreement between two companies: Allstate and DSA. Allstate is a nationally recognized insurance company. DSA is a Florida-based company that provides support services to independent route distributors of commercial bakers. *See* Compl. ¶¶ 2, 7;

---

[1] A copy of the Agreement is attached as Exhibit A to DSA's Complaint. *See* Compl. Ex. A, ECF No. 1-1. The copy of the Complaint and its Exhibits is attached to this Motion as **Exhibit A**.

Agreement at 1. Allstate and DSA entered into the Agreement "to establish a mutually beneficial relationship . . . for the distribution of insurance products." Compl. ¶ 9; Agreement at 1. Put differently, under the Agreement, DSA would provide its members information about Allstate insurance programs and would not provide information about insurance programs offered by any other insurance provider without Allstate's consent. Agreement ¶ 7. Moreover, DSA agreed to "use its best efforts to convert its existing members to programs offered by Allstate." *Id.* at ¶ 14. In exchange, Allstate would pay DSA quarterly fees based on the number of DSA members enrolled in Allstate insurance programs. *Id.* at ¶¶ 2–6. Additionally, Allstate was responsible for servicing its DSA-member customers, developing and distributing Allstate marketing materials for DSA to provide to its members, and developing a semi-annual newsletter for DSA members. *Id.* at ¶¶ 9–11. The Agreement also provides that it is governed by Illinois law. *Id.* at ¶ 18. DSA does not dispute that Illinois law applies in this case. *See* Compl. ¶ 11.

Notably, the Agreement does not contain a fixed or definite term. Rather, it states that it can only be terminated (1) for cause, or (2) should Allstate stop offering the types of policies used by DSA members:

> This Agreement is not terminable by either party except for cause; provided, however, that Allstate may, at any time and for any reason, in its sole discretion, decide to exit the independent distributor marketplace and may thereupon terminate this Agreement upon ninety (90) days written notice to DSA.

Agreement ¶ 16. As such, the Agreement was to continue from when it was signed on February 1, 1995 (Agreement at 1) in perpetuity. *Id.* at ¶ 16.

**II.     After 28 years, Allstate exercised its right to terminate the Agreement at will.**

On October 14, 2022, Allstate notified DSA of its intention to terminate the Agreement. *See* Compl. ¶ 14; *id.* at Ex. B, ECF No. 1-2 ("Termination Notice"). In the Termination Notice, Allstate stated that the Agreement would terminate as of October 17, 2022. *See* Termination

Notice. In accordance with the Termination Notice, Allstate did not make any further payments to DSA after October 14, 2022. Compl. ¶¶ 13, 35. Despite being notified of Allstate's termination of the Agreement, DSA continued to demand payment under the Agreement, ultimately resulting in the filing of this lawsuit. *See* Compl. Ex. C, ECF No. 1-3.

For the reasons set forth below, Allstate's termination was proper because, under Illinois law, Agreements of indefinite duration are terminable at will. Accordingly, once Allstate served its Termination Notice, it was no longer obligated to make any payments to DSA under the Agreement.[2]

## LEGAL STANDARD

Pursuant to Rule 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim [for] relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Although the Court must accept as true all factual allegations and draw all reasonable inferences in favor of the plaintiff, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint must be dismissed. *Id.* at 679.

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint

---

[2] Although Allstate disagrees with several allegations in the Complaint, it takes those allegations as true for purposes of this Motion, as required by Rule 12(b)(6). *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (Courts hearing a motion to dismiss must "assum[e] that all the allegations in the complaint are true (even if doubtful in fact)"); *Perks v. TD Bank, N.A.*, 444 F. Supp. 3d 635, 639 (S.D.N.Y. 2020) (when deciding a motion to dismiss "[t]he Court accepts all factual allegations in the complaint as true"); *Manigault v. ABC Inc.*, No. 17-CV-7375(KNF), 2018 WL 2022823, at *3 (S.D.N.Y. Apr. 12, 2018) ("Conclusory allegations that the defendant violated the standards of law do not satisfy the need for plausible factual allegations." (citations omitted)).

as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010) (internal citation omitted). Before materials outside of the record may become the basis for a dismissal, "it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document[s]" and that "there exist no material disputed issues of fact regarding the relevance of the document." *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006).

## ARGUMENT

When DSA and Allstate entered into the Agreement, they agreed that it would be governed by Illinois law. *See infra* Part I. Under well-settled Illinois law, contracts of an indefinite duration—including contracts that state they are only terminable "for cause" or upon the occurrence of a non-fixed, unascertainable event—are terminable at will as a matter of public policy. *See infra* Part II.A. The Agreement between DSA and Allstate is such a contract and, under Illinois law, either party had the right to terminate it at will for any reason. *See infra* Part II.B. Accordingly, Allstate was permitted to terminate the Agreement on October 14, 2022 and therefore could not have breached the Agreement as a matter of law. *Id.* DSA's claims for declaratory judgement and equitable accounting also fail as a matter of law because both claims are entirely duplicative of DSA's breach of contract claim. *See infra* Part III. Consequently, all of DSA's claims should be dismissed with prejudice.[3]

---

[3] The Court "has discretion to dismiss with prejudice if it believes that amendment would be futile or would unnecessarily expend judicial resources." *Abu Dhabi Commercial Bank v. Morgan Stanley & Co. Inc.*, No. 08 CIV. 7508 (SAS), 2009 WL 3346674, at *2 (S.D.N.Y. Oct. 15, 2009) (quoting another source). Because no set of facts can change the plain language of the Agreement, amendment would be futile and dismissal with prejudice is required. *Id.*

**I.      The Agreement is governed by, and this Court should apply, Illinois law.**

"As a general matter, a district court sitting in diversity jurisdiction applies the choice-of-law rules of the state in which it sits." *Torain v. Clear Channel Broad., Inc.*, 651 F. Supp. 2d 125, 137 (S.D.N.Y. 2009). "New York law is clear in cases involving a contract with an express choice-of-law provision: [a]bsent fraud or violation of public policy, a court is to apply the law selected in the contract as long as the state selected has sufficient contacts with the transaction." *Id.* Here, the Agreement expressly provides that it is "governed by the laws of the State of Illinois." Agreement ¶ 18. DSA has conceded this fact. Compl. ¶ 11. Further, Allstate is an Illinois corporation with its principal place of business in Northbrook, Illinois. *Id.* at ¶ 3. As such, there can be no question that the transaction between the parties has sufficient contacts with Illinois. *Amerisure Ins. Co. v. Laserage Tech. Corp.*, 2 F. Supp. 2d 296, 302 (W.D.N.Y. 1998) ("Since Illinois is the location of the insureds' principal places of business, and since it appears that the policies were issued and delivered in Illinois and the premiums paid in Illinois, and since the parties agree that Illinois law should apply, this Court will apply the law of Illinois."). Therefore, the Court must apply the laws of the State of Illinois in this case.

**II.     Allstate was permitted to terminate the Agreement as a matter of public policy.**

DSA cannot establish a breach for failure to pay commission-based installment payments after Allstate terminated the Agreement for the simple reason that the Agreement is terminable at will under Illinois law.

**A.     The Illinois Supreme Court has held that contracts of indefinite duration are terminable at the will of either party as a matter of public policy.**

The state of Illinois has long recognized the principle that, as a matter of public policy, no person should be forced to be contractually obligated to another in perpetuity. *Jespersen*, 700 N.E.2d at 1017; *Rico Indus., Inc. v. TLC Grp., Inc.*, 6 N.E.3d 415, 420 (Ill. App. Ct. 2014) ("[W]e

5

find that perpetual contracts are contrary to public policy." (citation omitted)). Thus, where an agreement provides either no duration or would require the contract to continue in perpetuity, it is terminable at will. *Id.* Likewise, Illinois courts have repeatedly held that an agreement must have an objective event fixing its duration or it is terminable at will. *See, e.g.*, *R.J.N. Corp. v. Connelly Food Prods., Inc.*, 529 N.E.2d 1184, 1187 (Ill. App. Ct. 1988); *see also Riverside Mktg., LLC v. Signaturecard, Inc.*, 425 F. Supp. 2d 523, 531 (S.D.N.Y. 2006) (dismissing claims stemming from perpetual commission-based marketing agreement governed by Illinois law because "[u]nder Illinois law, a contract that offers the possibility of perpetual duration is terminable at will by both parties").

In *Jespersen*, the Illinois Supreme Court held that contracts of indefinite duration are terminable at the will of either party, even if the contract has termination provisions for cause or for a specific event. 700 N.E.2d at 1016. In that case, a manufacturer and a distributor entered into a sales distribution agreement of indefinite duration, although the agreement stated that it could be terminated should certain enumerated instances of material breach occur. *Id.* at 1015–16. The manufacturer terminated the agreement, and the distributor brought an action against the manufacturer for breach of contract. *Id.* After examining the termination provisions, the court held that they were not sufficient to eschew the general rule of at-will termination for perpetuity contracts:

> As we have already acknowledged, the rule that contracts of indefinite duration are terminable at will has long been followed in Illinois, and our courts have applied the rule in a variety of contexts including employment contracts, credit card agreements, money market fund accounts, and even sales contracts. The parties here expressly drafted a contract that was to last "indefinitely," which our courts have always construed to mean terminable at will.

*Id.* at 1017 (citations omitted). Accordingly, the distributor's case was dismissed with prejudice; the Illinois appellate and supreme courts affirmed.

The Illinois Supreme Court in *Jespersen* relied on *R.J.N. Corp. v. Connelly Food Products, Inc.* to reiterate the rule that an agreement must contain a specific objective event of termination, or it is terminable at will. 529 N.E.2d at 1186–87. In *R.J.N.*, Rich, an ice cream broker, and Connelly, a distributor, entered into a written agreement whereby Connelly agreed to make ice cream deliveries to Rich's customers, and Rich would receive a percentage of all sales. *Id.* at 1185–86. The contract provided that it would "remain in effect for as long as Connelly serves Rich's customers." *Id.* Connelly terminated the agreement; Rich sued for breach of contract. The court held that, as a matter of law, Connelly did not breach the agreement because the contract was terminable at will. *Id.* at 1186–87. The appellate court reasoned:

> The clause that "this agreement will remain in effect for as long as Connelly serves Rich's customers" cannot be construed as an "objective event" the occurrence of which terminates the contract thereby making it sufficiently definite in duration. Rather, a practical construction of the clause indicates an indefinite duration of the contract based on [Connelly's] apparent option/decision not to serve Rich's customers at some point in time.

*Id.* at 1187. The court went on to address when a terminating event may be deemed objective such that it fixes the duration of an agreement. It held:

> [A] practical construction of the clause indicates an ***indefinite*** duration of the contract based upon [Connelly's] apparent option/decision to not serve [Rich's] customers at some point in time. In other words, the contract would remain in effect ***only as long as*** [Connelly] served [Rich's] customers and, therefore, ***when*** [Connelly] would decide to no longer serve [Rich's] customers could not be ascertained, making the duration of the contract indefinite and terminable at will.

*Id.* (emphasis in original). Because the Court could not determine when Connelly would decide to trigger the purported "terminating event," it was not a terminating event that could be objectively ascertained by the court. As a result, the contract was deemed to be of indefinite duration and terminable at will. *Id.*

7

B.     **Because the Agreement is of an indefinite duration, it is terminable at will.**

Just like in the *R.J.N.* case, the Agreement between Allstate and DSA is of a perpetual duration:

> This Agreement is not terminable by either party except for cause; provided, however, that Allstate may, at any time and for any reason, in its sole discretion, decide to exit the independent distributor marketplace and may thereupon terminate this Agreement upon ninety (90) days written notice to DSA.

Agreement. ¶ 16. The agreement in *R.J.N.* provided that it would remain in effect only as long as the defendant served the plaintiff's customers. *R.J.N.*, 529 N.E.2d at 1187. Here, the Agreement similarly states that it will continue until Allstate "decide[s] to exit the independent distributor marketplace." Agreement ¶ 16. Both occurrences—the defendant in *R.J.N.* deciding to stop servicing the plaintiff's customers and Allstate deciding to exit the independent distributor marketplace—are not objective events. Consequently, both the *R.J.N* agreement and the Agreement between DSA and Allstate are agreements "of an indefinite duration." *R.J.N.*, 529 N.E.2d at 1187. Thus, just as the court found the *R.J.N* agreement to be terminable at will, this Court should find the DSA–Allstate Agreement terminable at will. *Id.*; *see also See Ruca Hardware, Ltd. v. Ruca Chien*, No. 94 C 3635, 1995 WL 307172, at *7 (N.D. Ill. May 17, 1995) (holding that "contracts which are to remain in effect 'for as long as "x" corporation is in existence' are indefinite in duration and therefore terminable at will").

Importantly, the Agreement's statement that it is "not terminable by either party ***except for cause***" does not create a "terminating event" that overcomes the presumption attached to perpetuity contracts under Illinois law.[4] As the court in *Jespersen* recognized, "***any*** contract is

---

[4] DSA appears to believe that Allstate, with its Termination Letter, was terminating the Agreement "for cause." *See, e.g.*, Compl. ¶¶ 15, 32 ("There was no valid cause asserted by Allstate to terminate the Letter Agreement."). As an initial matter, this is a legal conclusion that the Court is under no

8

terminable upon the occurrence of a material breach" and "an agreement which is otherwise indefinite in duration and terminable at will cannot be converted into an agreement of definite duration by the mere transcription of such universals within the text of the contract." 700 N.E.2d at 1016–17 (quoting another source); *see also id.* ("[W]here one party has the option or decision to either comply with the contract or not, the duration of the contract is indefinite and terminable at will."); *Profile Prods., LLC v. Soil Mgmt. Techs., Inc.*, 155 F. Supp. 2d 880, 883–84 (N.D. Ill. 2001) (holding that a party's material breach cannot be considered an "objective event" that creates a contract sufficiently definite in duration).

Despite well settled law to the contrary, DSA argues that the Agreement should continue forever and that Allstate must continue to pay DSA for all customers originally referred to it by DSA. DSA's argument ignores the fact that Allstate has already paid DSA for making those introductions for *twenty-eight years* and DSA has not provided Allstate with any leads since March of 2018. *See* Termination Notice. Putting that aside, agreements that are terminable at will "are generally held to permit termination for any reason, good cause or not, or no cause at all." *Alderman Drugs*, 515 N.E.2d at 694. Moreover, "no obligation can be implied which would be inconsistent with and destructive of the unfettered right to terminate at will." *Jespersen v. Minn. Mining & Mfg. Co.*, 681 N.E.2d 67, 71 (Ill. App. Ct. 1997) (citing *Gordon v. Matthew Bender & Co.*, 562 F. Supp. 1286, 1289–90 (N.D. Ill. 1983) (abrogated on other grounds)). Because the Agreement is indefinite and thus terminable at will, "it would be incongruous to say that . . .

---

obligation to accept. *See Iqbal*, 556 U.S. at 678 (holding that the requirement that a court accept the factual allegations in the complaint as true does not extend to legal conclusions). Even so, DSA's conclusion is irrelevant; the Agreement was terminable at will and thus could be terminated "for any reason, good cause or not, or no cause at all." *Alderman Drugs, Inc. v. Metro. Life Ins. Co.*, 515 N.E.2d 689, 694 (Ill. App. Ct. 1987).

9

[Allstate] agreed to an obligation that would be inconsistent with and destructive of its right to terminate the agreement at will." *Id.*

Like the agreements at issue in *Jespersen* and *R.J.N.*, the Agreement in this case is of an indefinite duration, giving Allstate the right to terminate it at will. Thus, Allstate's decision to exercise that right is expressly permitted under Illinois law and cannot constitute a breach of contract. For that reason, DSA's breach of contract claim must be dismissed.

### III. DSA's declaratory judgment and equitable accounting claims are duplicative of its breach of contract claim and thus fail for the same reasons.

Courts regularly dispose of claims for declaratory relief that are brought alongside a claim for breach of contract that would resolve the same legal issue. *See Amusement Indus. V. Stern*, 693 F. Supp. 2d 301, 311 (S.D.N.Y. 2010) ("The fact that a lawsuit has been filed that will necessarily settle the issues for which the declaratory judgment is sought suggests that the declaratory judgment will serve 'no useful purpose.'"); *Intellectual Capital Partner v. Institutional Credit Partners LLC*, No. 08 Civ. 10580(DC), 2009 WL 1974392, at *6 (S.D.N.Y. July 8, 2009) ("[D]eclaratory relief would serve no useful purpose as the legal issues will be resolved by litigation of the breach of contract claim." (citations omitted)); *Dolphin Direct Equity Partners, LP v. Interactive Motorsports & Entm't Corp.*, No. 08 Civ. 1558(RMB)(THK), 2009 WL 577916, at *11 (S.D.N.Y. Mar. 2, 2009) ("Because this Court has already analyzed the parties' rights and obligations under the [contracts] in connection with Plaintiffs' breach of contract claims, a declaratory judgment on the same issues would be superfluous.").

The declaratory judgment DSA seeks would serve no "useful purpose" in the overall context of this litigation. DSA's breach of contract claim fundamentally turns on whether Allstate's termination of the Agreement was permitted. Indeed, it would not be possible for the Court to find in DSA's favor on its Declaratory Judgment claim without first deciding whether the

Agreement was terminable at will. Thus, "[DSA's] declaratory judgment claim seeks resolution of legal issues that will, of necessity, be resolved in the course of the litigation of the other causes of action. Therefore, the claim is duplicative in that it seeks no relief that is not implicitly sought in the other causes of action." *Sofi Classic S.A. de C.V. v. Hurowitz*, 444 F. Supp. 2d 231, 249–50 (S.D.N.Y. 2006).

Likewise, because DSA has brought a claim seeking money damages for breach of contract (*see* Compl. ¶ 1), it necessarily cannot succeed on its equitable accounting claim. An equitable accounting is "an adjustment of the accounts of the parties and a rendering of the balance ascertained to be due." *Drake Enters. v. Colloid Envtl. Techs. Co.*, No. 08 C 6753, 2009 WL 1789355, at *2 (N.D. Ill. June 24, 2009) (quotation omitted). To state a claim for an equitable accounting under Illinois law, a plaintiff must allege the "absence of an adequate remedy at law." *Kempner Mobile Elecs., Inc. v. Southwestern Bell Mobile Sys.*, 428 F.3d 706, 715 (7th Cir. 2005) (citation omitted). Courts regularly dismiss equitable accounting claims that are brought alongside duplicative breach of contract claims. *See, e.g.*, *Oil Express Nat'l, Inc. v. Latos*, 966 F. Supp. 650, 652 (N.D. Ill. 1997) (dismissing claim for equitable accounting because plaintiff had an adequate remedy through its breach of contract claim); *Greene v. Mizuho Bank, Ltd.*, 206 F. Supp. 3d 1362, 1378–79 (N.D. Ill. 2016) (same); *see also Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 478 (1962) ("The necessary prerequisite to the right to maintain a suit for an equitable accounting, like all other equitable remedies, is . . . the absence of an adequate remedy at law."); *Devyn Corp. v. City of Bloomington*, 38 N.E.3d 1266, 1278–79 (Ill. App. Ct. 2015) ("To sustain an action for an equitable accounting, the plaintiff must show the absence of an adequate remedy at law. . . a trial court will not order an equitable accounting where to do so would be unnecessary.").

11

Here, DSA brought a breach of contract claim premised on the same underlying facts and legal questions as its equitable accounting claim. By doing so, DSA cannot sincerely allege that it lacks an adequate remedy of law. For that reason, DSA's equitable accounting claim must be dismissed.

## CONCLUSION

The Agreement between the Parties was terminable at will, and Allstate exercised its right to terminate the Agreement on October 14, 2022. In doing so, Allstate severed all rights and obligations under the Agreement and, consequently, there can be no breach of the Agreement by Allstate. Likewise, DSA's claims for declaratory judgment and equitable accounting fail because they are duplicative of DSA's breach of contract claim. For those reasons, as well as those set forth above, Defendant Allstate Insurance Company respectfully requests that this Court dismiss the Complaint with prejudice.

Dated: August 14, 2023

Respectfully submitted,

BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP

By: /s/ J. Scott Humphrey
J. Scott Humphrey (admitted *pro hac vice*)
Edward C. Wipper
Katie M. Burnett (admitted *pro hac vice*)
71 South Wacker Drive, Suite 1600
Chicago, Illinois 60606-4637
312.212.4949
E: shumphrey@beneschlaw.com
Attorneys for Defendant Allstate Insurance Company